UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 15-138-DLB-EBA

BRITTANY HARRIS                                                                    PLAINTIFF

vs.                       **MEMORANDUM OPINION AND ORDER**

KIMBERLY KLARE                                                  DEFENDANT

*** *** *** *** *** ***

This is an action brought pursuant to 42 U.S.C. § 1983 and Kentucky law to recover for injuries arising from an allegedly unlawful search of Plaintiff Brittany Harris by Defendant Officer Kimberly Klare.

**I. Factual and Procedural Background**

On the night of May 22, 2014, seventeen year-old Brittany Harris was riding home from dinner with her mother, father, and sister in a car driven by her mother. (Doc. # 33 at 42, 45-48). Before Harris and her family got home, Erlanger police pulled the car over at a gas station. *Id.* at 49-52. According to Harris, the police officer had been peering at the car's license plate prior to the stop. *Id.* at 48-50. The officer then followed the car for about a mile before flashing his lights and pulling them over. *Id.* When the officer approached the vehicle, he told Harris's mother that he pulled her over because he could not read the license plate. *Id.* at 52-54. After asking for Harris's mother's license and registration, the officer discovered that her license was suspended. *Id.* at 54. Another officer arrived in a police cruiser, noticed Harris and her father sitting in the back of the

1

car, and opened the car's rear door. *Id.* at 56-57. The police saw Harris's father's equipment and tools on the floor and in containers in the car. *Id.* at 58-60.

A third police cruiser arrived, and the first officer asked Harris's mother to step out of the car. *Id.* at 62-63. Another officer told Harris and her other family members to wait inside the car. *Id.* at 67-68. A fourth cruiser arrived. *Id.* at 68. While she was waiting in the car with her father and sister, Harris told her father she needed to use the bathroom, and he told a police officer. *Id.* at 67-68. The police officer told Harris she needed to wait. *Id.* Later, an officer told Harris, her father, and her sister that Harris's mother had a license suspension from Ohio, and that was creating an issue in the system with how to respond. *Id.* at 69. The officer asked Harris, her father, and her sister to step out of the car and wait on the curb. *Id.* at 71-72. Harris sat on the grass while her father and sister sat on the curb. *Id.* During this time, another officer asked them questions about their dates of birth and social security numbers. *Id.* at 71-72. The officers then informed Harris that they were arresting her mother. *Id.* After that, Harris and her family were told that the police had requested a canine unit to sniff the vehicle. *Id.* at 79. When the dog arrived to sniff the car, there were six police cruisers at the scene, and Harris's mother had been handcuffed and put in a police car. *Id.* at 77-78, 82. Defendant Kimberly Klare, another Erlanger police officer, arrived after that, and the police asked Harris's father whether Officer Klare could escort Harris to the bathroom. *Id.* at 84. He agreed. *Id.*

The officers told Harris to go ahead, and she began to walk toward the bathroom, crossing the pumps in front of the gas station. *Id.* at 84. Harris noticed that Klare was not behind her, turned around, and saw Klare speaking to another police officer. *Id.* at

84-85. Klare motioned for Harris to approach her, and the two walked toward each other. *Id.* at 85. At that point, the stories diverge.

According to Harris, Officer Klare asked if she had anything on her person that was sharp or could cut Klare. *Id.* at 85-86. Harris said no. Harris claims that Officer Klare never asked permission to search her, but told her she "may have to search her." *Id.* at 86. Then, Officer Klare asked Harris "[w]ould you step over here," to which Harris replied "[y]es," and stepped toward Klare. *Id.* at 86. Then Klare "had [Harris] face the gas pump" and "told [Harris] to spread [her] legs and put [her] hands behind [her] back." *Id.* Harris did as she was told. Klare explained what she would be doing, patted Harris down, and then told her she would search her bra. *Id.* at 86-87. Harris claims that Officer Klare reached under her bra and pinched her breasts. *Id.* at 87-88. Harris says she did not know what was going on, did not know she could refuse to be searched, and did not know she was going to be searched when she walked over to Officer Klare. *Id.* at 88. Harris admits that she never objected to the search, but claims that she saw Officer Klare "put her hand on her gun" several times while Klare spoke to her. *Id.* at 89. Harris claims that she "didn't feel like [she] could say anything" because she was bothered and threatened by Officer Klare putting her hand on the gun, which Harris claims was not snapped into its holster. *Id.* at 90-91. Harris also states that she "didn't feel threatened at first," and that "[i]t was only when the search started to happen that I felt like I couldn't do anything because, at first, I thought we were just going to the bathroom. I didn't feel I was ever going to be touched or hurt or anything." *Id.* at 96.

According to Officer Klare, however, when the two first spoke, she explained to Harris that Harris was not under arrest, and that Klare had been called to the scene

3

because the police usually call female officers to escort other females to the bathroom. (Doc. # 34 at 36-37). Officer Klare agrees with Harris that she asked whether Harris had anything sharp on her person that would stick or harm Klare, and that Harris said no. *Id.* at 37. However, Officer Klare claims that she did ask for and receive permission to search Harris. *Id.* at 37. Officer Klare asserts that she pulled the underwire of Harris's bra out slightly so that anything tucked underneath would fall out, and used the back of her hand to feel underneath and between Harris's breasts. *Id.* at 40. After conducting the search, Officer Klare escorted Harris to the bathroom, then brought Harris back to the traffic stop. *Id.* at 37.

Defendant has moved for summary judgment. (Doc. # 30). Plaintiff filed a response, and Defendant replied. (Docs. # 36 & 37). The motion is therefore ripe for the Court's review

**II.     Analysis**

    **A.     Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the Court that there are no disputed material facts and that she is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts

showing that there is a genuine issue for trial." *Id.* at 250. However, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## B. Plaintiff Was Lawfully Detained

Otherwise valid consent to be searched can be "tainted by the illegality" if the detention that precedes it is unlawful. *Florida v. Royer*, 460 U.S. 491, 507-08 (1983). In her response brief, Plaintiff argues that she could not have validly consented to a search under any circumstances because the initial stop of her mother lacked probable cause, and because officers "had no particularized and objective basis to believe that Harris was engaging in any criminal activity." (Doc. # 36 at 8-10). Harris also argues that Officer Klare is not entitled to qualified immunity because she had no reason to believe that Harris's seizure was supported by probable cause, and therefore acted unreasonably in searching her, even if Harris had validly consented. *Id.* at 12-13. Each of those contentions is incorrect.

The Sixth Circuit has held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993)).[1] "The probable cause determination turns on what the officer knew *at the time he made the*

---

1  The Sixth Circuit has said that a *Ferguson* stop (requiring probable cause) and a *Terry* stop (requiring less-stringent reasonable suspicion) are "analogous" because both are "legitimate detentions that do not rise to the level of an arrest." *Bradshaw*, 102 F.3d at 211 n.13. As explained below, the stop of Harris's mother, and the passengers in the car, is legitimate under either standard.

5

*stop.*" *Id.* Harris herself explained that, before the police officer pulled over her mother, he peered with "interes[t]" and "confus[ion]" at the back of the car. (Doc. # 33 at 50). The officer then explained to Harris's mother that he pulled her over because he could not read the license plate. *Id.* at 52. Therefore, the officer had probable cause for a stop based on a traffic violation. *See, e.g.*, Ky. Rev. Stat. Ann. § 186.170(1) ("No rim, frame, or other covering around the plate shall in any way obscure or cover any lettering or decal on the plate.").

During a traffic stop, an officer seizes not only the driver, but every passenger in the vehicle. *Brendlin v. California*, 551 U.S. 249, 255-59 (2007). Therefore, Harris, along with her father and sister, were lawfully seized when her mother was pulled over, and no individualized suspicion was required. What's more, "[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* In addition, as happened here, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997).

In this case, the stop was prolonged by the officers' reasonable suspicion of drug activity due to the presence of Harris's father's tools and equipment in the car.[2] (Doc. #

---

2 Although Harris argues that the record "contains no evidence to support the conclusion that any of the officers on the scene had any particularized and objective basis to believe that Harris was engaging in any criminal activity," Harris does not challenge the lawfulness of the request for a canine unit in light of the tools and equipment in the car. (Doc. # 36 at 9-10).

6

34 at 21-22); *see Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (police may extend traffic stop on reasonable suspicion). In light of that suspicion, the police requested a dog sniff. "[A] dog sniff performed during a traffic stop does not violate the Fourth Amendment." *Johnson*, 555 U.S. at 333; *see also United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (police had reasonable suspicion to detain defendant for 30-45 minutes for drug-sniffing dog to arrive). Therefore, Harris's arguments that the initial stop of her mother was unlawful, and that she herself was unlawfully detained, fail. No particularized suspicion was needed to detain Harris because she was a passenger in the car of a person who was lawfully detained. Moreover, Officer Klare testified that she was informed by a fellow officer that the police had stopped Harris's mother initially for an obstructed license plate, and that at the time Officer Klare arrived the police were investigating potential drug activity with a canine unit. (Doc. # 34 at 21). Officer Klare also knew that she had been called to the scene because a female wanted to use the restroom. *Id.* at 24. An objective officer in Officer Klare's position would therefore have no reason to believe that Harris was unlawfully detained and unable to voluntarily consent.

### C. Qualified Immunity on Fourth Amendment Claims

Harris brings a civil-rights claim under 42 U.S.C. § 1983, alleging that Officer Klare violated her Fourth Amendment right to be free from unreasonable searches when Officer Klare conducted a warrantless search of her person on May 22, 2014. Whether Harris voluntarily consented to Officer Klare's search is the critical question in this case.[3]

---

3    Officer Klare raises no other grounds for summary judgment, and offers no other justification for her search of Harris. There is no evidence to suggest, and Officer Klare does not argue, that she had a reasonable suspicion that Harris was "armed and

7

Government officials sued for constitutional violations under § 1983 in their individual capacities are shielded by qualified immunity. Qualified immunity may be overcome, however, if a plaintiff can show that a constitutional right was clearly established at the time of the alleged misconduct and that the officer's conduct amounts to a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court may address those two prongs in either order. *Id.* at 236. In this case, the Court will assume a constitutional violation *arguendo* and determine whether qualified immunity protects Officer Klare from suit nonetheless.

"The qualified immunity question itself can be understood as a two-part analysis." *Smith v. City of Wyoming*, 821 F.3d 697, 708-09 (6th Cir. 2016). "First, we consider the clarity at the time of the alleged civil rights violation to determine whether the right at issue was clearly established." *Id.* (internal quotation marks omitted). "Second, we consider the specific factual circumstances known to the officer to determine whether a reasonable officer would have known that her conduct violated that right." *Id.*

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (internal quotation marks omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative

---

dangerous" to justify a *Terry* frisk. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). Therefore, the Court focuses solely on the issue of consent.

nature of particular conduct is clearly established." *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2084 (2011).

In considering the specific factual circumstances, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). "If *no* reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Malley v. Briss*, 475 U.S. 335, 341 (1986)).

The broad legal principles in this case are well established. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 219, 219 (1973) (internal quotation marks and alteration omitted). "It is equally well settled" that one of those exceptions is a search conducted with consent. *Id.*

In this case, Officer Klare argues that she is entitled to qualified immunity on Harris's Fourth Amendment claim because her actions did not violate Harris's clearly established right not to be searched without consent. "The burden to establish that the exception [to the warrant requirement] applies is on the officer invoking consent." *Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 854 (6th Cir. 2012). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). Instead, "[t]he consent to search must be 'voluntary, unequivocal, specific, intelligently given, and uncontaminated by

9

duress or coercion.'" *Andrews*, 700 F.3d at 854 (quoting *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)). Consent "may be in the form of words, gesture, or conduct," *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc), but it is valid only if given voluntarily, *Ohio v. Robinette*, 519 U.S. 33, 40 (1996).

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 418 U.S. at 227. In making this inquiry, "[f]irst, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). "Second, a court should consider the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police, and indications of more subtle forms of coercion that might flaw [an individual's] judgment." *Id.* (internal quotation marks omitted).

To determine whether Officer Klare is entitled to qualified immunity, the Court "must consider the particular circumstances" of the case and "whether [she] could reasonably have believed that [her] actions were consistent with clearly established law." *Smith*, 821 F.3d at 709 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In doing so, the Court will consider the facts as shown by Harris and make all reasonable inferences in her favor. *Id.*

### 1. *Characteristics of Harris*

Harris was seventeen years old, had graduated from high school at the time of the search, and appeared to be of reasonable intelligence. (Docs. # 33 at 9; # 1 at ¶ 4). All

of those factors suggest that she was capable of giving voluntary consent to a search, and none of them are dispositive of her ability to consent under clearly established law.

According to Harris, Officer Klare did not ask for or receive specific permission to search. (Officer Klare disagrees, Doc. # 34 at 37, but at this stage of the analysis, the Court credits the testimony of Harris.) Harris testified that Klare told her "[w]e may have to search you" and that "[s]he didn't really ask it like a question." (Doc. # 33 at 86). For that reason, Harris explains, she did not know that she could refuse to consent to the search. *Id.* at 88. However, "knowledge of the right to refuse is *one* factor to be taken into account" when determining whether consent is voluntary, and the Supreme Court has held that it is not a prerequisite to voluntary consent. *Schneckloth*, 412 U.S. at 227 (emphasis added). Therefore, Officer Klare's alleged failure to advise Harris of her right to refuse and Harris's professed lack of awareness of that right does not violate a clearly established right. *Id.*

The Sixth Circuit has instructed that "the court must look to the revealed circumstances of the encounter and not simply to the searched party's later testimony as to [her] consciousness at the time of the encounter" when evaluating questions of voluntariness. *Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 673 (6th Cir. 2005) (finding a search voluntary where the searched party "did not object in any discernable way to the officer's questions or to the subsequent search"). At the time of the encounter, Harris admits that Officer Klare said she "may have to search" Harris, that Klare asked Harris "[w]ould you step over here" to begin the search, that Harris said "[y]es, that Harris followed Officer Klare's directions about how and where to stand, and that she did not

object to the search at any point while it happened. (Doc. # 33 at 86-88); *see Aquino*, 158 F. App'x at 673.

This situation is distinguishable from cases like *Worley*, where the Sixth Circuit found a search to be non-consensual because an individual told the officer who requested to search his bag, "[y]ou've got the badge, I guess you can [search]." *See United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999). The Sixth Circuit held that, in situations "where the government purports to rely on a defendant's statement to establish that valid and voluntary consent was rendered," the court must examine the content of the statement to ensure that it "unequivocally, specifically, and intelligently" indicates that the defendant consented. *Id.* at 386 (internal quotation marks omitted). Statements that express that a person to be searched is only complying because he believes he has no choice are not constitutionally valid. But in this case, Harris did not make a statement that indicated that she believed she had no choice but to comply. Instead, after being told she may have to be searched, she said "yes" when Officer Klare asked her to move over to her, continued to follow Officer Klare's directions, and did not object. Thus, Officer Klare's actions do not violate the clearly established law in *Worley* or its progeny.

Harris argues that a reasonable juror could conclude that Harris believed she had no other choice but to comply with Officer Klare's instructions, and therefore, she merely submitted to Officer Klare's authority and did not voluntarily consent. (Doc. # 36 at 15). However, a reasonable officer could conclude that Harris was aware that she did have other choices besides complying, meaning that her consent was voluntary. For example, Harris knew that Officer Klare was at the gas station to escort her to the bathroom and that the search was related to that request, not because Harris was under arrest or

suspected of a crime. (Doc. # 33 at 84-86). Harris also heard another police officer ask her father if it was okay for Officer Klare to escort her to the bathroom. *Id.* at 84. For that reason, the factual scenario here is similar to the situation in *Waldon*, where an individual's conduct amounted to voluntary consent to a search in part because the officer gave the individual "no indication he was not free to leave [or] to refuse to respond to questioning." *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2013). There is no evidence that Officer Klare indicated to Harris she was not free to leave the encounter and rejoin her father.[4]

### 2. Details of Harris's Detention

With respect to the second set of factors courts examine when determining whether consent is voluntary—the details of the detention—Harris does not argue that Officer Klare's behavior was overtly coercive towards her. For example, Harris does not allege that Officer Klare used force or threatened to use force against her before the search. (Doc. # 33 at 90). Harris does claim that Officer Klare touched her gun several times while she was talking to her "right before the search," and that Officer Klare's holster was unsnapped, which Harris claims made her fearful. (*See* Doc. # 36 at 7-8; Doc. # 33 at 91-93). The video from the gas station security camera is grainy and does not have audio, but it does show Harris walking toward the bathroom, stopping, turning around, and Harris and Officer Klare walking toward each other. (Doc. # 30-2 at 10:17:06 p.m. to 10:17:18 p.m.). Then, Officer Klare appears to be speaking to Harris for approximately twenty seconds. *Id.* at 10:17:18 p.m. to 10:17:37 p.m. After that, Klare directs Harris to face the gas pump and conducts the search. Despite Harris's testimony that Officer Klare

---

4     Harris does not claim that her need to use the bathroom was urgent or argue that any denial of that request would have had other constitutional implications.

13

touched the handle of her gun several times while they were talking (Doc. # 33 at 91-93), the Court saw no evidence of that in the video. Instead, it appeared that Officer Klare's right arm and hand were in front of her body during the entire conversation at the gas pump. The video therefore does not show that Officer Klare's conduct was coercive or objectively unreasonable. *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010). Even crediting Harris's testimony, however, Officer Klare's touching of her holstered gun, without more, is not sufficiently coercive to "overb[ear]" Harris's will in a way that vitiates consent. *Schneckloth*, 412 U.S. at 226; *cf. United States v. Beauchamp*, 659 F.3d 560, 575 (6th Cir. 2011) (Kethledge, J., dissenting) (examples that coercive behavior include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled") (quoting *United States v. Peters*, 194 F.3d 692, 697 (6th Cir. 1999)).

However, overt duress or coercion are not the only circumstances that can vitiate consent; "indications of more subtle forms of coercion that might flaw [an individual's] judgment" must also be considered. *Ivy*, 165 F.3d at 402 (internal quotation marks omitted). In this case, Harris and her family had been required to wait in their car, and then on the curb, for approximately forty-five minutes while police determined whether Harris's mother's license was suspended and while the dog sniffed the car. (Docs. # 33 at 42; # 30-2 at 10:18 p.m.) (initial traffic stop began at about 9:30 p.m., security footage from gas station of search has approximate timestamp of 10:18 p.m.). During that time, Harris told her father she needed to use the bathroom, and he told a police officer, who told Harris she needed to wait. *Id.* at 68. Harris testified that while the canine sniffed the

car, there were six police cruisers at the scene, and her mother had been handcuffed and put in a police cruiser. *Id.* at 77-78, 82. After the dog sniff, Officer Klare arrived, and the police asked Harris's father whether Officer Klare could escort Harris to the bathroom. *Id.* at 84. The presence of multiple police officers, their degree of control over Harris and her family's movement, the length of time she was detained, and the fact that Harris was not allowed to go to the bathroom until Officer Klare arrived are all relevant to the voluntariness of Harris's consent. But ultimately, the question of voluntariness does not "tur[n] on the presence or absence of a single controlling criterion" but must "reflec[t] a careful scrutiny of all the surrounding circumstances." *Schneckloth*, 412 U.S. at 226. "While th[e Supreme] Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and alterations omitted). Harris does not offer, and the Court could not find, such precedent.

In this case, after "defin[ing] the plaintiff's asserted right with specificity, and focus[ing] on the particular facts known to the officer at the time," the Court concludes that Officer Klare is entitled to qualified immunity on Harris's Fourth Amendment claim. *Smith*, 821 F.3d at 708-09. The totality of the circumstances make it objectively reasonable for Officer Klare to believe, even if mistakenly, that Harris had voluntarily consented to the search of her person. It would therefore not be clear to a reasonable officer that her conduct was unlawful in the situation Officer Klare confronted.

### D. Qualified Immunity on State-Law Claim

In addition to her Fourth Amendment claim under § 1983, Harris alleges that Officer Klare intentionally assaulted her during the search in violation of Kentucky state law. (Doc. # 1 at ¶¶ 10-11). As Officer Klare points out in her summary judgment motion, this is properly construed as a claim for battery, not assault. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) ("Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching."). In Kentucky, state officials sued in their individual capacity received qualified official immunity for violations of state law, "which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Harris does not dispute that Officer Klare acted in the scope of her duties as a police officer when she searched Harris, or that her decision to conduct a search was discretionary under Kentucky law. *Id.* (discretionary acts involve exercise of "personal deliberation, decision, and judgment"). Under *Yanero*, the burden then shifts to the plaintiff to show that the discretionary act was not performed in good faith. *Id.* Harris reasserts her Fourth Amendment qualified immunity arguments on this point. (Doc. # 36 at 16). As explained above, those arguments fail, and Defendant is entitled to official immunity on the state-law claims as well.

### III. Conclusion

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1) Defendant Kimberly Klare's Motion for Summary Judgment (Doc. # 30) is **GRANTED**;

2) Plaintiff Brittany Harris's Complaint is **DISMISSED WITH PREJUDICE**;

3) This matter is **STRICKEN** from the Court's active docket; and

4) A Judgment shall be entered contemporaneously herewith.

This 4th day of August, 2017.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Cov15\15-138 Harris v. Klare MOO.docx